MICHAELIS *et al. v.* ROESSLER *et al.*

*(Circuit Court, D. New Jersey.* March 26, 1889.)

PATENTS FOR INVENTIONS—EXTENT OF CLAIM.
        As the second claim of letters patent No. 322,194, issued July 14, 1885, to
    Gustavus Michaelis for "the manufacture of chloroform and purified acetates,"
    was found by the court to embrace only the manufacture of chloroform from
    the "liquid products" named, and not the manufacture of chloroform from
    acetone, the subsequent manufacture of chloroform from acetone only is
    not a violation of the injunction issued in accordance with such finding.

In Equity. On motion for contempt. For hearing on the bill, see
34 Fed. Rep. 325.
*Wm. H. Arnoux,* for the motion.
*Wayne MacVeagh* and *Simon Sterne, contra.*

BUTLER, J. What does the decree mean? The parties disagree
about it, and have presented lengthy arguments on the subject. Of
course we know what it means,—what the language was intended to ex-
press. If susceptible of another interpretation we could not adopt it,
even though this might better express our present judgment. We be-
lieved it to be distinct and clear, and, when read in connection with the
opinion filed, could not be misunderstood. But for the disagreement of
counsel we would think so still. We will restate (more at large) the con-
clusions on which it rests. The second claim of the patent, which alone
was involved, reads as follows:
    "The production of chloroform from the liquid products resulting from
the decomposition of crude acetates at high temperatures by subjecting said
liquid products to the action of a hypochlorite, and removing the chloroform
thereform by distillation, substantially as described."
    We found this claim to embrace just what its language imports,—
the manufacture of chloroform from all, substantially, the "liquid prod-
ucts" named, (containing this substance,) the higher-boiling ketones
as well as the acetone,—by the treatment described; and, consequently,
that it does not embrace the manufacture of acetone from acetates, nor
chloroform from acetone only. That this is its proper construction we
had no doubt. The language, considered alone, as we believed, plainly
signifies this; and, when read in connection with the specifications, and
the patentee's statements on applying for patents in this country and
Germany, will bear no other. Clearly, we believed, it was not intended
to embrace the manufacture of acetone, (from anything containing it, by
any practicable method,) nor the production of chloroform therefrom.
The patentee, as we found, attaches little importance to acetone; so little
that he endeavors, as the specifications say, to avoid its production by
his treatment of the acetates. He could not, however, as we believed,
have embraced this if he had desired, because it was old. His method
of decomposing acetates, and distilling the products, of themselves con-
stitute nothing new. It follows, in our judgment, that the only novelty

embraced in the claim is (as before stated) the process of obtaining chloroform from the "liquid products" in the manner described.

The manufacture of chloroform from acetone, as formerly practiced, was expensive, and comparatively unprofitable. We found that the patentee was the first to discover that the liquid products of decomposed crude acetates contain many chloroform-bearing properties besides acetone; that by treating them in the manner described chloroform may be obtained at reduced expense; and that this discovery, as before stated, is what the claim embraces. While we regarded the discovery as important, we did not consider it so important as the patentee asserts, because we believed him to be mistaken respecting the comparative value of acetone and the other properties of the described liquid, in obtaining chloroform. This mistake, however, which affects the importance of the discovery, does not affect the validity of the patent. We also found that the respondents had infringed,—that they had manufactured chloroform, not from acetone only, but from all the described liquid products. This was one of the most earnestly contested points in the case; the complainants asserting that the higher-boiling ketones were employed, and the respondents denying it. On this assertion the charge of infringement rested. With the proofs before us, the conclusion reached was unavoidable. It was to arrest this infringement that the decree was entered.

Are the respondents guilty of contempt? The master reports that they neither sold nor manufactured chloroform, (since notice of the decree,) except such as was obtained from acetone only. This finding, although excepted to, is now acquiesced in. It is conclusive of the question. The respondents changed their method of manufacturing, after suit, for the purpose, as they assert, of excluding all else than acetone in procuring chloroform. These changes the master considers immaterial, —as effecting the result merely "in degree." His finding, however, that the result is the production of chloroform from acetone only, proves him to be in error. The error arises from his mistaken belief that this is substantially what the court found to be the result of their former operations. But for this misunderstanding the report (which shows much care and ability) would have been against the applications. The motion must be dismissed.